UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JOSHUA E.,

           Plaintiff,

-v-

ANDREW SAUL,
Commissioner of Social Security,

           Defendant.

---

19-CV-01403-MJR
DECISION AND ORDER

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 15)

Plaintiff Joshua E.[1] ("Plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, Plaintiff's motion (Dkt. No. 8) is denied, defendant's motion (Dkt. No. 11) is granted, and the case is dismissed.

---

[1] In accordance with the District's November 18, 2020, Standing Order, plaintiff is identified by first name and last initial.

## BACKGROUND[2]

Plaintiff protectively filed his applications for DIB and SSI benefits on March 17, 2017, alleging an onset date of December 2, 2016, due to chronic kidney failure, edema, diabetes, and "cathederal in chest." (Administrative Transcript ["Tr."] 162-76). Plaintiff's claims were denied initially on May 18, 2017, and he thereafter filed a written request for a hearing on June 2, 2017. (Tr. 69, 102, 106-107). On October 19, 2018, a hearing was held before Administrative Law Judge ("ALJ") Marilyn D. Zahm in Jamestown, New York. (Tr. 33-68). Plaintiff appeared with counsel. A vocational expert also participated at the hearing via telephone. On November 16, 2018, the ALJ issued a decision finding Plaintiff not disabled from December 2, 2016, through the date of the decision. (Tr. 12-68). The Appeals Council denied Plaintiff's request for review on August 22, 2019, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-6). This action followed.

## DISCUSSION

I.   *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic

---

[2] The Court presumes the parties' familiarity with Plaintiff's medical history, which is summarized in the moving papers.

evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.    <u>Standards for Determining "Disability" Under the Act</u>

A "disability" is an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of

not less than twelve (12) months." 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §§423(d)(2)(A), 1382c(a)(3)(B). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §§404.1520(b), 416.920(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* §§404.1520(b), 416.920(b). Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §§404.1520(c), 416.920(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* §§404.1520(c),

416.920(c). As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* §§404.1520(c), 416.920(c). Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §§404.1520(d), 416.920(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.* §§404.1520(d), 416.920(d).

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §§404.1520(e), 416.920(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §§404.1545(a)(1), 416.945(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §§404.1520(f), 416.920(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* §§404.1520(f), 416.920(f). Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education,

- 5 -

and work experience, the claimant "can make an adjustment to other work." *Id.* §§404.1520(g)(1), 416.920(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* §§404.1520(g)(1), 416.920(g)(1). If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.* §§404.1520(g)(1), 416.920(g)(1).

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

### III.   *The ALJ's Decision*

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since December 2, 2016, the alleged onset date. (Tr. 17). At step two, the ALJ found that Plaintiff had the following severe impairments: nephrotic syndrome; diabetes mellitus; diabetic neuropathy; and diabetic retinopathy. (Tr. 17-19). At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 19-20).

Prior to proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform light work as defined in the regulations except:

> the claimant must avoid reading small print (*i.e.* 12 point type). The claimant is able to stand and walk for 45 minutes at one time and sit for 2 hours at one time and then lie flat for a short time (during normal breaks). The claimant must never climb, balance, kneel, crawl, but can occasionally stoop and crouch. The claimant must avoid unprotected heights, heavy moving machinery and temperature extremes including humidity and vibrations.

(Tr. 20).

At step four of the sequential evaluation, the ALJ concluded that Plaintiff is unable to perform any past relevant work. (Tr. 26). At step five, the ALJ found that, based on Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including Assembler, Table Worker, and Laminator. (Tr. 27-28). Accordingly, the ALJ determined that Plaintiff has not been under a disability from December 2, 2016, through the date of the decision. (Tr. 28).

IV.   *Plaintiff's Challenge*

Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence because it was not "tethered" to a medical source opinion. The Court finds this argument without merit.

Although medical opinions are considered in assessing a claimant's RFC, ALJs are not required to adopt wholesale any one opinion. It is the ALJ's duty to assess the record as a whole, resolve any conflicts, and formulate a RFC finding that is unique to the claimant and the evidence of record. *See* 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2) ("Although we consider opinions from medical sources on issues such as ...your residual functional capacity...the final responsibility for deciding these issues is reserved to the Commissioner."); *see also Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) ("In our review, we defer to the Commissioner's resolution of conflicting evidence."); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.").

Here, the record shows that Plaintiff's diabetes was well controlled in November 2016, but worsened during his incarceration, resulting in kidney failure and approximately three months of dialysis. (Tr. 38-39, 291). Plaintiff experienced body-wide swelling and was admitted for treatment in January 2017. (Tr. 298, 312). Testing revealed large proteinuria due to recurrent nephrotic syndrome. (Tr. 299). Plaintiff underwent dialysis and he improved sufficiently such that he was released back to the correctional facility in February 2017. (Tr. 298-300). Outpatient dialysis was prescribed. (Tr. 300). Plaintiff's condition further improved, his kidney functioning recovered, and the dialysis catheter was removed on April 7, 2017. (Tr. 296-297, 528-529).

Consultative examiner, Dr. Nikita Dave, M.D., examined Plaintiff in May 2017, shortly after dialysis was complete. (Tr. 342-346). Dr. Dave opined that Plaintiff had several moderate to marked limitations, he would benefit from sedentary activities, and he may need allowances for continued medical care requiring frequent hospital or physician visits. (Tr. 346). As the ALJ noted, Dr. Dave's opined limitations were consistent with the medical evidence at that time, but subsequent evidence shows that Plaintiff experienced subsequent improvement. (Tr. 25, 344-345).

Plaintiff's edema was improved, but still present, in June 2017, despite his noncompliance with fluid and salt restrictions. (Tr. 497, 501). By July 2017, the medical record shows no edema. (Tr. 466). Later that month, Plaintiff admitted being noncompliant with fluid and salt restrictions, and he had edema, but it was much improved. (Tr. 495). Plaintiff had only trace edema in September 2017. (Tr. 486, 488). He had no edema in October, November, and December 2017; and no edema in January or March 2018. (Tr. 359, 362, 368, 448, 451, 457, 460, 462).

In September 2018, DNP Elizabeth Printup opined that Plaintiff had no lifting or carrying limitations, but walking and standing were limited to 45 minutes due to leg and feet pain. (Tr. 540). Plaintiff needed to lay flat after sitting two hours; he could not climb, balance, kneel or crawl; but he could occasionally stoop and crouch (Tr. 541). His ability to reach, handle, feel, see small print, hear, and speak were affected by his condition, but his ability to push and pull was not. (Tr. 541). DNP Printup also opined that Plaintiff had restrictions with heights, moving, machinery, temperature extremes, chemicals, dust, noise, fumes, humidity, and vibration. (Tr. 541). She assessed that Plaintiff was disabled. (Tr. 542).

The ALJ's RFC finding is consistent with the record as a whole, including treating source opinion evidence. The ALJ found that Plaintiff could stand and walk 45 minutes at one time, consistent with DNP Printup's opinion and Plaintiff's testimony. (Tr. 20, 42, 540). The ALJ restricted Plaintiff from climbing, balancing, kneeling, and crawling, but found that he could occasionally stoop and crouch – all of which are consistent with DNP Printup's opinion. (Tr. 20, 541). DNP Printup stated that Plaintiff had difficulty reading "small" print and the ALJ restricted Plaintiff from reading small print. (Tr. 20, 541). The ALJ also restricted Plaintiff from unprotected heights, heavy moving machinery, and temperature extremes including humidity and vibrations consistent with DNP Printup's opinion. (Tr. 20, 542).

The ALJ further found that Plaintiff could sit for two hours but he must then lie flat for a short time, consistent with DNP Printup's opinion. (Tr. 20, 541). Plaintiff argues that, aside from his testimony, there is no clear evidence demonstrating the frequency or amount of time he needed to lay down. However, Plaintiff has the burden to provide

evidence demonstrating disability. See 20 C.F.R. §§ 404.1512 and 416.912. He cannot satisfy his burden with a lack of evidence. A lack of supporting evidence on a matter for which the claimant bears the burden of proof, particularly when coupled with other inconsistent record evidence, can constitute substantial evidence supporting a denial of benefits. See Talavera v. Astrue, 697 F.3d 145, 153 (2d Cir. 2012). Plaintiff bears the burden through step four. See Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008) (claimant bears both the general burden of proving disability within the meaning of the Act and the burden of proof at the first four steps).

The ALJ gave sufficient reasons for those limitations that she did not adopt. For instance, DNP Printup opined that Plaintiff had no lifting and carrying limitations. (Tr. 540). However, the ALJ limited Plaintiff to light work, consistent with Plaintiff's testimony that he could lift and carry 10 pounds in each hand. (Tr. 20, 43). DNP Printup also opined that Plaintiff was limited with respect to reaching, handling, feeling, hearing, and speaking. (Tr. 541). However, Plaintiff testified that he could reach overhead and use his hands and arms to push and pull and there was no evidence supporting hearing or speaking limitations. (Tr. 43). Additionally, Plaintiff had intact hand and finger dexterity, normal grip strength, and he could zip, button, and tie bilaterally during examination by Dr. Dave. (Tr. 345). DNP Printup opined that Plaintiff had restrictions with pulmonary irritant such as chemicals, dust, and fumes and she assessed that Plaintiff was disabled. (Tr. 541-42). As the ALJ properly noted, Plaintiff continues to smoke which is inconsistent with limitations due to pulmonary irritants. (Tr. 25, 44, 285, 307, 313, 320, 343, 358, 445, 448, 451, 458). Moreover, the medical record also fails to support complaints or limitations resulting from pulmonary irritants. Finally, DNP Printup's statement that Plaintiff was

disabled is not a medical opinion. Rather, it involves vocational issues and application of the social security program rules and it is an issue reserved to the Commissioner. See 20 C.F.R. §§ 404.1527(d) and 416.927(d) ("We will not give any special significance to the source of an opinion on issues reserved to the Commissioner").

In sum, the Court finds that the ALJ formulated a RFC finding that is supported by substantial evidence and appropriately accounted for all of Plaintiff's functional limitations.

## CONCLUSION

. For the following reasons, Plaintiff's motion for judgment on the pleadings (Dkt. No. 8) is denied, defendant's motion for judgment on the pleadings (Dkt. No. 11) is granted, and the case is dismissed.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:   February 9, 2021
         Buffalo, New York

MICHAEL J. ROEMER
United States Magistrate Judge